Mr. Cloud appeals basically the District Court's denial of his suppression motion and that the arrest was unlawful and therefore the subsequent search, the fruits of the subsequent search required suppression. There are two main bases that we maintain the arrest was unlawful. The first is the simpler of the two analysis and that under state law, which is applicable in this case because the arresting officers were on the reservation and were county sheriff's office officers, the arrest was unlawful because the officers failed to confirm the warrant prior to effectuating the arrest of Mr. Cloud, which was the basis of their contact with Mr. Cloud. What's the source of this purported requirement to confirm and what does confirm mean? I looked and I couldn't find authority that set that up as a requirement or defined clearly what was required. It's a long line of precedent cases in the state of Washington, starting with the Barnes case and the Elwood cases that were cited in our brief. Well, I looked at those cases and those don't seem to be the same to me. The problem in Barnes is that the individual told the officer that the warrant had been cleared sometime before and the officer's knowledge of the warrant was dated. And in this case, the officer was, the warrant had not been cleared and the officer was aware from that same day that it existed. And in Elwood, the problem wasn't a failure to confirm. The problem was that the initial stop wasn't based on reasonable suspicion. So I'm still grasping for where this purported requirement, the officer has to do something more than be currently aware that there was, in fact, a warrant outstanding. What's confirm mean and where does it come from? Well, confirm will allow the officer to. I don't think the case has decided to do it. So point me to a case that does. Well, there's also the Trinidad case that cited by the government. In that case, an officer was aware. And I'll get back to being aware of whether or not there's a warrant, because in this case, the officers, it was unclear whether they even possessed the physical warrant. The one officer testified that he had heard about a warrant. The warrant was a couple of weeks old, maybe three weeks old. He had never bothered to confirm to see if that warrant was indeed valid. In these cases, with the Washington cases, with the Washington courts are saying that if you are going to, and in Washington, their constitution gives an elevated status to their citizens under Article I, Section 7. They have a greater expectation of privacy than what's afforded under the Fourth Amendment. However, what the Washington courts have said is when you cannot detain somebody or arrest somebody based on a warrant, and these cases show unless it's a confirmed warrant. You've articulated a standard and cited to me two cases that don't say what you say they say. I'm still waiting to find out what the source of that alleged standard is. And I'm still trying to figure out what it means to confirm. I mean, in this case, we have a radio log showing that there was a check of some kind. I don't think we have the details, but the suggestion is, okay, is this the guy? He's the guy. I mean, why wouldn't that satisfy whatever requirement is established under the Washington cases? Well, the officer stated on cross-examination that he did not confirm the warrant. In their database, they don't have confirmation that the warrant is still active or that the warrant is valid. What they have in their database is the information they have on the information, such as an address. They were specifically looking at that database on Mr. Cloud so that they could see his picture, so that the deputies could identify him when they went to Mr. Culp's residence. Now, wait a minute. Checking a database via a radio log, how's that going to reveal a picture? No. The radio log shows that they went into their spillman system. Okay. And the spillman system is what would give them the information. But the officers testified straightforward that they did not confirm the warrant. So we have that. Regardless of what system they looked in, they didn't make a call to dispatch. They did not call to confirm that warrant, which is what they did on Mr. Cloud's warrant after he had been arrested, searched, questioned, cuffed, taken to the police car, and driven to the jail. And I don't know if you have any more questions on that issue. Well, I confess I'm not persuaded yet, but you might as well move on. Okay. And under Trinidad, the case, I think that's our starting point on this issue. Otherwise, we don't get any further if the court's not convinced that state law requires confirmation of a warrant. So I will come back to that in my rebuttal. I'll look at the Trinidad case and discuss that case. The second issue is whether or not the officers, the arrest of Mr. Cloud, whether or not they violated tribal sovereignty when they arrested Mr. Cloud on trust land within the boundaries of the reservation. The Washington State Court's opinion on point is Washington State v. Clark, and that's the Washington Supreme Court. There the state held that tribal sovereignty is infringed by the state in the execution of a state warrant service. When that happens, the warrant is invalidated, and the subsequent arrest or search is unreasonable under the Fourth Amendment. Now, Nevada v. Hicks is the unit. Does that make a difference whether the warrant is for a violation of tribal law or state law? I think it makes a difference if they're – well, the Supreme Court case has said if it's – I would think if it's tribal law, then this wouldn't even be an issue because it would be for tribal officers, and I don't think the state has jurisdiction over members on the reservation for a violation of tribal law. But for state law, in Nevada v. Hicks, the United States Supreme Court said that there's – they found no violation of tribal sovereignty when agents with a legitimate state warrant enter reservation for purposes of effectuating a lawful state warrant for off-reservation crimes. The Clark case said they took Hicks into consideration, and they ruled that where the facts of the case are distinguishable from Hicks, the test for a violation of tribal sovereignty is whether the state agents follow tribal procedure for the execution of the state warrant. Here, there are several distinguishable facts, first and foremost, and distinguishable from Hicks itself. But the reason I ask that is that there was concurrent criminal jurisdiction in the Clark case, and I don't see that here. So if it's a violation of state criminal law, aren't the officers entitled to enforce it even on tribal lands? They are so long as they – and in the Clark case, so long as they follow tribal procedure. And that – the big question there was for an off-reservation crime. In this case, the allegation is that he violated his supervised release or his community custody. His community custody officer – his office is in the bounds of the reservation. So that warrant issued from within the boundaries of the reservation, and Mr. Cloud was found on trust property within the boundaries of the reservation. So there's another distinguishing term. And I've – if I have answered your question, I'd like to reserve the time. May it please the Court and Counsel, I'm James Gake, and I represent the United States. I'd like to go first to that Clark case. That Clark case is not relevant to this discussion at all. So if I understand, one of the things that happened here was there was a complete failure to comply with the memorandum of understanding between the county and the tribe, but your position is that that's just words and not binding. That's also the district court's position. Yeah. On the theory that the United States has always broken its word to the Indians, why not here again? Well, I don't think that's what the district court said, Your Honor. It didn't, but that seems to be the – that this memorandum of understanding, and if I understand your position, and I agree with you it may well be well supported by the law, is a worthless piece of paper. In so many words, it could be characterized that way, but I would say – I would put a different spin on it. I would put – the government's perspective isn't they can just ignore this – they should just ignore this willfully. I think the facts before the district court in the suppression hearing did not establish that they were cavalier in their ignoring the memorandum. They didn't know – the testimony of the officers at the suppression hearing was they did not know at the time that the residents were – they arrested the defendant on a checkerboard reservation where there's – a lot can be trust land, a lot can be fee land. It's not a – But your legal position is nevertheless that even if they did know, it wouldn't matter. Yes, but I think the facts of the case don't show that. The facts of the case don't show a cavalier, oh, we don't care about the memorandum. The facts of the case show the officers testifying at the suppression hearing that they will call tribal police and they will follow the memorandum if they know that the land they're going to find the defendant is trust land. Could they have been a little bit more diligent? Potentially. But it has no legal significance, and that's why Clark has no legal significance, because the memorandum of understanding is just that. It's an agreement between the parties that has various provisions in it to talk about. It's not enforceable as to third parties. It changes nothing about jurisdiction, nothing about criminal law, nothing about the parties' responsibilities. So that's not Clark. Clark was talking about an actual regulation statute procedures that were enshrined in tribal procedures. I agree with that. I'm just commenting on what I think is the reality of what a dubious document this memorandum of understanding is. From the government's perspective, from the federal sovereign's perspective, if the state sovereign and the tribal sovereign have a memorandum of understanding, the state officer should do their best to follow it. Absolutely. The government's not. They know of its existence. That's the beginning point, right? Only one said they didn't know of its existence. The others said they did know of it and they would trigger it when necessary. But that's the situation we have here, is that this memorandum of understanding confers no rights on the defendant. Hicks is in complete control of this case. It doesn't matter that the DOC officer sat within the external boundaries of the reservation when he issued the arrest warrant. My colleague cannot say that he was on tribal land when he did that. And he was a state sovereign who did that. And Hicks is directly on point in this situation. This is about the execution of state process, state legal process, on tribal land. Hicks allows for that. And none of the cases cited by the defense change that. And as to this issue about the lawfulness of the arrest, I agree, Judge. The two cases cited by the defense do nothing to establish that the warrant was not confirmed. We have a factual finding by the district court that the warrant was confirmed. We have testimony at ER 55. What do you understand, confirmed or required? I understand it to be exactly what they did. They got into a database. They were aware that a warrant was present. They did that before contact with the defendant. They did a double confirmation after he was in cuffs. What they didn't do. Did the database disclose whether the warrant was current? The testimony as I understood it at the suppression hearing said, I'm looking at ER 97. And this is the testimony of Deputy McIlrath. And in the morning before you went out to do your warrant service, did you engage in any type of checks? Yes. And specifically, did you do a warrant check on an individual by the name of Nathan Glatt, the defendant in this case? Yes. And would such a check be visible in your radiolog? So there's proof the check occurred. And the testimony. The warrant check means their records show a warrant remains outstanding as of that time. The ‑‑ admittedly, the testimony from the suppression hearing did not go into that specific. And part of my confusion here is I'm trying to infer what this means in the database. And I accept there could be mistakes. Sometimes you don't get it updated. But it seemed to me what distinguished this case from the cases relied upon by the In one case, the defendant said specifically, correctly, that the warrant had been cleared. In Trinidad, the premise was the warrant had been quashed. So the question becomes, at the time of these events, did the officers have a legitimate basis to believe there was at that point in time an outstanding warrant? And your understanding of the testimony you just read, the warrant check, you think constitutes that testimony. I do. And more importantly than what I think, the district court thought so. So we have a factual determination that's been memorialized both in the court's oral rulings at the time of the suppression hearing and in the court's written ruling. So that's a hurdle the defense has to overcome. And nothing that they've submitted in their briefing overcomes that hurdle. So we have ‑‑ what do we have? We have a valid arrest warrant, not contested, issued by a valid state sovereign. They executed it at a location which the Supreme Court says they can. It says they can go on a tribal land and execute that piece of state process. They did so. When they did, what did they find when they arrested the defendant? They found they did a search incident to arrest. There's no serious dispute that they can't do a search incident to arrest. What did they find? They find a loaded revolver in the defendant's pocket. So then we get to the last issue about this acceptance of responsibility argument. As the district court found, the defendant can't run with the, that ain't my pants, that ain't my gun defense, and get acceptance of responsibility. That's just ridiculous. And the district court followed the procedures under the application notes and presided over the trial. So there's certainly no two‑level reduction for acceptance of responsibility. So what we're left with is a valid arrest, a valid transfer, or a valid acceptance of the case by federal authorities because you have a valid state arrest, you have a defendant who's in violation of federal law, you have a trial that follows that, you have a conviction, that conviction should be upheld by this court. Thank you, counsel. Of course, if there are no questions, I have no further comments. Thank you. Thank you, Your Honors. First, in the Trinidad case, the officer was aware of an arrest warrant, aware of one. He then called dispatch to ‑‑ I'm going to stop because Trinidad starts with the proposition the warrant had been quashed. So the issue was whether the officer's alleged good faith belief that there was a warrant was sufficient. But the problem was that there wasn't a valid warrant, and I don't see how that applies to this case. Well, I think it applies only in that the court has a question, and I know the United States thinks or believes that checking the Spillman database is akin to confirming a warrant, but it's not. Well, when the officer testified, I checked the warrant by accessing the state database, and there was a warrant outstanding. There's an inference that the database accurately reflects the fact that there's a warrant outstanding. Was there any cross‑examination to sort of undermine the validity or accuracy of this state database? No, but the officer on cross‑examination distinctly said that he had not confirmed the warrant prior to. And I know the court is not ‑‑ But there was a warrant, right? But there was a warrant. And that's what makes this case unlike Trinidad, because you couldn't have a good faith belief because you hadn't checked. But in this case, he didn't need to rely on a good faith belief. There was a warrant. And I still am looking for the source of the alleged obligation to check something if, in fact, there's not a quashed warrant or a withdrawn warrant so that there's a mistake made. Here there's no mistake. There was a warrant. What additional requirement is there? Well, we would submit there was the requirement under state law to confirm the warrant prior to its execution. Yeah, but I haven't seen it for any of the three cases so far, so. Also, regarding the Hicks case, as the government says that the Hicks case rules this case, however, the Clark case, the Washington Supreme Court case, stated that where you can distinguish the facts of the case from Hicks, that the test in Matthews is the starting point, and that is if they didn't comply with tribal procedures, which there clearly are in this case. Thank you, counsel. If you can wrap up your argument, you're over time. Thank you. All right, the matter is submitted for decision by the court. We thank both sides for your argument.
judges: Clifton, Nguyen, Rakoff